UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSIE F.,[1]

    **Plaintiff,**

v.

    Case No. 3:20-cv-00515
    Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

Plaintiff filed this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding her applications for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 6, on *Plaintiff's Motion to Vacate Referral of this Matter to the Magistrate Judge pursuant to F.R.C.P. 73(b)(3) and 28 U.S.C. 636(c)(4)*, ECF No. 20, on Plaintiff's appeal from the final decision of the Commissioner of Social Security denying Plaintiff's applications, and on *Plaintiff's Statement of Errors*, ECF No. 14, *Defendant's Memorandum in Opposition*, ECF No. 17, *Plaintiff's Reply*, ECF No. 18, and the *Certified Administrative Record*, ECF No. 11. For the reasons that follow, the Court denies *Plaintiff's Motion to Vacate Referral of This Matter to the Magistrate Judge pursuant to F.R.C.P. 73(b)(3) and 28 U.S.C. 636(c)(4)*, ECF No. 20, and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

grants *Plaintiff's Statement of Errors,* reverses the Commissioner's decision, and remands the matter to the Commissioner for further consideration.

I.       **MOTION TO VACATE REFERRAL TO THE MAGISTRATE JUDGE**

On February 1, 2021, and with the unanimous consent of the parties, *Joint Consent*, ECF No. 6, this action was referred to "a United States magistrate judge to conduct all proceedings and order the entry of a final judgment. . . ." *Order*, ECF No. 6. The case was thereupon transferred to the consent docket of Magistrate Judge Ovington and, on May 10, 2021, was further transferred to the consent docket of Magistrate Judge Silvain. *Order Reassigning Case*, ECF No. 10. Both magistrate judges sit in the Western District of the Southern District of Ohio, at Dayton. Neither Plaintiff nor the Acting Commissioner objected to either transfer. On March 22, 2022, and after the action had been fully briefed, the case was transferred to the consent docket of the undersigned, who sits in the Eastern Division of the Southern District of Ohio, at Columbus. *Order Reassigning Case*, ECF No. 19. There was no objection to that transfer until February 16, 2023, when Plaintiff filed *Plaintiff's Motion to Vacate Referral of This Matter to the Magistrate Judge pursuant to F.R.C.P. 73(b)(3) and 28 U.S.C. 636(c)(4)*, ECF No. 20 (hereinafter referred to as "the *Motion to Vacate*"). In support of the *Motion to Vacate*, Plaintiff argues only, "[G]iven that the case was filed in Dayton and Plaintiff never consented to the current magistrate judge in the Columbus Division, Plaintiff contends that the extraordinary circumstances standard is met and respectfully requests that the Court vacate the referral of this matter to the magistrate judge." *Motion to Vacate*, ECF No. 20, PageID# 1393. The Acting Commissioner has not responded to the *Motion to Vacate*.

Where the parties unanimously consent under 28 U.S.C. 636(c)(1) to disposition of an action by a magistrate judge, the referral of the case grants to the magistrate judge "full authority

2

over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Moses v. Sterling Comm (Am.), Ind.*, 122 F. App'x 177, 181 (6th Cir. 2005) (citing *Roell v. Withrow*, 538 U.S. 580. 585 (2003)). The governing statute also provides, however, that "[t]he court may, for good cause shown on its own motion, or under the extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection." 28 U.S.C. 636(c)(4). *See also* Fed. R. Civ. P. 73(b)(3) ("On its own for good cause—or when a party shows extraordinary circumstances—the district judge may vacate a referral to a magistrate judge under this rule."). The United States Court of Appeals for the Sixth Circuit has expressly approved the resolution of a motion to vacate the reference by the presiding magistrate judge. *Moses*, 122 F. App'x, at 181 ("It was therefore appropriate for Magistrate Judge King to rule on Moses's request to vacate the reference. . . .").

A number of courts have considered the authority of a magistrate judge to proceed under 28 U.S.C. § 636(c) when a case is transferred from one magistrate judge to another. As a general rule, where the parties have consented to proceeding before a specific magistrate judge, the subsequent transfer of the case to a different magistrate judge obviates the original consent and renewed consent is required before the transferee magistrate judge may proceed under 28 U.S.C. § 636(c). *See, e.g., Kalan v. City of St. Francis*, 274 F.3d 1150, 1152 (7th Cir. 2001) ("[A] consent that specifies a particular magistrate judge by name [does not] constitute[ ] consent to a different magistrate judge"); *Mendes Junior Int'l Co. v. M/V Sokai Maru*, 978 F. 2d 920, 922 (5th Cir. 1992) (same); *Sell v. Conway*, 2011 WL 5325978, at *1 (W.D.N.Y. Nov. 4, 2011) (parties' consent did not extend to a second magistrate judge where the court's notice advised the parties that consent would result in the transfer of the case to a magistrate judge specified by name). On the other hand, where the parties' consent does not specify a particular magistrate judge, but

3

instead expressly contemplates the referral to "a" magistrate judge, the later transfer to another magistrate judge for disposition is not improper. *Wilhelm v. Rotman*, 680 F.3d 1113, 1119-20 (9th Cir. 2012); *Hester v. Graham, Bright & Smith, P.C.*, 289 Fed. Appx. 35, 39-40 (5th Cir. 2008) (per curiam) (same); *Washington v. Kellwood Co.* 2015 WL 8073746, at *2 (S.D.N.Y. Dec. 4, 2015) (same). *But see Williams v. Geo Grp., Inc.*, No. 22-11266, 2023 WL 1957496, at *1 (11th Cir. Feb. 13, 2023) ("We conclude that [plaintiff's challenge to the jurisdiction of the transferee magistrate judge] fails, in part, because she consented to 'a magistrate judge' in her notice of consent and did not object to Magistrate Judge Matthewman presiding over the case throughout the entirety of the district court proceedings or seek to withdraw her consent.").

The notice issued in this case advised each party, "You may consent to have your case referred to **a magistrate judge**, or you may withhold your consent without adverse substantive consequences." *Notice, Consent, and Reference of a Civil Action to a Magistrate Judge*, ECF No. 6 (emphasis added). The district judge's order of reference of the action reads:

> **IT IS ORDERED**: This case is referred to **a United States magistrate judge** to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

*Order of Consent*, ECF No. 7 (emphasis added).[3] Because the parties consented to the exercise of plenary jurisdiction by "a magistrate judge," it follows that the parties consented to the exercise of jurisdiction by *any* of the District's magistrate judges, including the undersigned.

Plaintiff does not argue that her consent to "a magistrate judge" was coerced. *See Moses*, 122 F. App'x at 181. Moreover, Plaintiff's articulated reason for vacating the referral—

---

[3] The docket entries refer to "the" magistrate judge. *See* ECF No. 6 (*"JOINT CONSENT OF THE PARTIES TO PROCEED BEFORE **THE** MAGISTRATE JUDGE"*)(emphasis added); ECF No. 7 ("Order of Consent to Jurisdiction by US Magistrate Judge. This case is referred to **the** US Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73") (emphasis added). However, as quoted above, the actual consent of the parties and the actual order of reference refer only to "a" magistrate judge; neither makes reference to a particular magistrate judge.

*i.e.*, she did not consent to disposition by a magistrate judge sitting in the District's Eastern Division—cannot be regarded as the "extraordinary circumstance[ ]" contemplated by 28 U.S.C. § 636(c)(4) or Rule 73(b)(3) in light of the Court's current practice of assigning all Social Security benefits cases to magistrate judges on a District-wide basis and regardless of the particular Division in which the assigned magistrate judge sits.

In short, *Plaintiff's Motion to Vacate Referral of this Matter to the Magistrate Judge pursuant to F.R.C.P. 73(b)(3) and 28 U.S.C. 636(c)(4)*, ECF No. 20, is **DENIED**.

## II.    PROCEDURAL HISTORY[4]

Plaintiff protectively filed her current applications for disability insurance benefits and supplemental security income on December 11, 2018, alleging that she has been disabled since June 19, 2018. R. 191-96, 197-206. The applications were denied initially and upon reconsideration and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 156-57. Administrative Law Judge ("ALJ") Heidi Southern held a hearing on June 1, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 29-68. In a decision dated June 9, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 19, 2018, Plaintiff's alleged disability onset date, through June 9, 2020, the date of that decision. R. 10-23. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 30, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. As noted above, on March 22, 2022, the case was reassigned to the undersigned. ECF No. 19. The matter is ripe for disposition.

---

[4] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

**III.     REOPENING OF PRIOR DENIALS**

Plaintiff 's earlier applications for benefits, alleging—as in this case—disability since June 19, 2018, were denied on October 17, 2018. *See* R. 13.[5] Plaintiff sought no further review of those denials, which therefore have become final. 20 C.F.R. §§ 404.987(a) ("Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review and that determination or decision becomes final."); 416.1487(a) (same).

However, a prior final decision denying a claim for benefits may be reopened, either on the initiative of the Commissioner or at the claimant's request, within 12 months "for any reason," 20 C.F.R. §§ 404.988(a); 416.1488(a), and within four years (or within two years in connection with a claim for supplemental security income) upon a showing of, *inter alia*, "good cause," 20 C.F.R. §§ 404.988(b); 416.1488(b), demonstrated by, *inter alia*, the furnishing of "[n]ew and material evidence," 20 C.F.R. §§ 404.989(a)(1); 416.1489(a)(1).

The ALJ in the matter presently before the Court acknowledged the earlier denials of Plaintiff's previous applications, but concluded that, because Plaintiff "has provided no new material evidence that touches on the time period previously adjudicated," there was no basis for reopening the earlier determinations. R. 13. Thus, the ALJ held, the period at issue in this action began no earlier than October 18, 2018, *i.e.*, the day after the earlier decisions became final. *Id*. In reaching this conclusion, the ALJ expressly referred to 20 C.F.R. §§ 404.957(c)(1) and 416.1457(c)(1), *id.*, which address an ALJ's dismissal of a request for a hearing because

---

[5] Attached to the Acting Commissioner's response to *Plaintiff's Statement of Errors* are documents purportedly associated with the denial of Plaintiff's earlier applications. *Defendant's Memorandum in Opposition*, ECF No. 17-1. Plaintiff objects to this Court's consideration of "information outside the administrative record," *Plaintiff's Reply*, ECF No. 18, PageID# 1388. This Court agrees with that objection and has not considered the proffered documents.

> [t]he doctrine of *res judicata* applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action. . . .

20 C.F.R. §§ 404.957(c)(1); 416.1457(c)(1). In the Sixth Circuit, this doctrine of administrative *res judicata* bars subsequent applications for benefits only "for the same period of time" that was considered in a prior application. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018). As relevant to Plaintiff's current applications, that period extends from June 19, 2018—Plaintiff's alleged disability onset date—through October 17, 2018—the date on which the denials of Plaintiff's previous applications became final. "In the absence of reopening, the ALJ adjudicates the subsequent period, but is bound by relevant factual findings made with respect to the prior period unless there is new and material evidence as to those findings." *Gay v. Comm'r of Soc. Sec.*, 520 Fed. Appx. 354, 357-58 (6th Cir. 2013).

Plaintiff contends that the ALJ erred in declining to reopen Plaintiff's earlier applications for benefits, arguing that "it is unclear what evidence was in the prior record and whether new material evidence that touches on the time previously adjudicated has been submitted." *Plaintiff's Statement of Errors*, ECF No. 14, PageID# 1328. *See also Plaintiff's Reply*, ECF No. 18, PageID# 1388 ("[T]he ALJ's findings are unsupported by the administrative record evidence and should be reversed and remanded."). However, a decision by the Commissioner not to reopen a prior administrative decision is not reviewable by a court absent a colorable constitutional claim. *Newhouse v. Comm'r of Soc. Sec.*, 771 Fed. Appx. 602, 605 (6th Cir. 2019)(citing *Califano v. Sanders*, 430 U.S. 99, 107-08 (1977); *Bogle v. Sullivan*, 998 F.2d 342, 346 (6th Cir. 1993)). Plaintiff raises no constitutional claim in connection with either the denials of her earlier applications for benefits or the ALJ's decision not to reopen the earlier

determination denying those applications. This Court is therefore without jurisdiction to consider this claim.

## IV.     LEGAL STANDARD OF REVIEW

After declining to reopen the earlier decision denying Plaintiff's applications for benefits, the ALJ considered Plaintiff's current applications for the period beginning October 18, 2018, applying the Commissioner's five-step sequential evaluation process for determining disability.

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v.*

*Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B.  Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

9

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

V. **THE ALJ's DECISION**

Plaintiff meets the insured status requirements through December 31, 2023. R. 12. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity through the date of her decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status/post right below-the-knee amputation; lumbar degenerative disc disease; diabetes mellitus with diabetic neuropathy; hypertension; peripheral artery disease; Fournier's gangrene;

hidradenitis; and adjustment disorder. R. 13. The ALJ also found that Plaintiff's diagnosed hyperlipidemia and alleged heart problems were not severe. R. 13-14.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 14.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following exceptions: *The claimant requires the use of a cane for ambulation*, but could carry the required weight in the contralateral hand. No more than occasional balancing, stooping, operation of foot controls with the left lower extremity, or climbing of ramps and stairs. No kneeling, crouching, crawling, operation of foot controls with the right lower extremity, requirement to ambulate over uneven terrain, or climbing of ladders, ropes, or scaffolds. No exposure to extreme heat, extreme cold, unprotected heights, or moving mechanical parts. The claimant is unable to perform work at a production-rate pace, such as assembly line work, but can perform goal-oriented work, such as office cleaner work.

R. 16 (emphasis added). The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a laundry operator. R. 21.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a document preparer/specialist, addresser, and surveillance-system monitor—exist in the national economy and could be performed by Plaintiff. R. 23. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings and conclusions and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 18. The Acting Commissioner takes the position that her decision should

be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 17.

## VI. RELEVANT EVIDENCE

Plaintiff suffers from diabetes, a condition that resulted in the July 2018 amputation of her lower right leg and which requires the use of a prosthetic device. R. 35, 40. In September 2018, Ryan Maenpa, M.D., a specialist in physical medicine and rehabilitation, evaluated Plaintiff and noted an impairment of balance. R. 776. Antony Jacob, M.D., examined Plaintiff in November 2018, noted that the incision had healed well, commented that Plaintiff was ready for a prosthesis, and referred her to physical therapy. R. 304, 310.

After being fitted with a prosthesis, Plaintiff began physical therapy in November 2018. Nichole Meiners, P.T., Plaintiff's physical therapist, commented that Plaintiff made continuous progress, but treatment notes continuously referred to the safety concern of "decreased balance." *See, e.g.*, R. 326, 323, 321, 319, 317, 316, 313, 311. Throughout the course of treatment, Plaintiff moved from reliance on a walker, R. 321, to the use of a cane at all times. R. 317, 319. By January 2019, Plaintiff reported that she been walking without a cane at times without difficulty. R. 315. She also reported to the physical therapist that she had traveled to Chicago "and did a lot of walking." R. 311.

The only medical opinions reflected in the record are those rendered by the state agency physicians. In April 2019, Leigh Thomas, M.D., reviewed the record on behalf of the state agency, R. 78-81, and opined that Plaintiff could lift or carry 20 pounds occasionally and ten pounds frequently. R. 79. Plaintiff could stand or walk for a total of four hours, and could sit for a total of six hours, throughout an eight-hour workday. *Id.* Plaintiff would be limited in her

ability to push and pull with her right lower extremity. *Id*. *She could ambulate with a prosthesis without an assistive device*, but could never use foot controls with her right foot. *Id*. (emphasis added). Plaintiff could occasionally climb ramps or stairs and could crawl. *Id*. She could frequently balance, stoop, kneel, and crouch but could never climb ladders, ropes, or scaffolds. *Id*. In July 2019, Lynne Torello, M.D., reviewed the record on reconsideration for the state agency, and agreed with Dr. Thomas' assessment. R. 101-104.

Plaintiff testified at the administrative hearing that she continues to experience swelling of the leg, which affects the fit of the prosthesis. R. 51. She cannot wear her prosthesis for a continuous eight hours, even if just sitting. R. 52. She removes her prosthesis when she experiences discomfort and swelling, which is often, and she does not use it while awaiting refitting. R. 67-68. When not using her prosthesis, she uses a wheelchair. *Id*. She also experiences phantom pain in her right leg, which is not helped by medication. R. 47. Her diabetic neuropathy, which she experiences on a daily basis, causes "jerking," tightness, and pain in her left foot. R. 46-47, 52.

Plaintiff cooks her own meals and does housework, although sometimes with help. R. 50. She can walk while shopping in smaller stores, but must use a rolling chair at larger stores. *Id*. She "can barely walk." R. 40. She can climb one step at a time "as long as they got rails to it." R. 55. She cannot walk on uneven surfaces. *Id*. She must always use a quad cane to help her walk and "level [her]self." R. 42, 53. The cane helps her with balance and changing from sitting to standing. R. 53. However, she also acknowledged that she "sometimes" went to the doctor without a cane. R. 42. Asked about her reported statement to the physical therapist regarding a trip to Chicago where she "did a lot of walking," Plaintiff testified, "[W]e basically stayed in the hotel. I didn't do too much walking, you know. I did a little bit, but I didn't do a lot of walking,

13

walking." R. 43. She had previously volunteered once a week at a senior care center from about 8:30 to 4:00, but stopped because she cannot walk to the bus stop. R. 44.

Although she has difficulty standing and walking, Plaintiff testified that she "can sit all day." R. 43. Asked what would prevent her from performing a "sit-down job," Plaintiff answered, "My education. . . . I mean, I can't – if it got to do with standing, I can't do it." *Id*.

The vocational expert testified that the use of a cane for balance, or the use of a wheelchair or walker two days per month, would preclude all sedentary and light work. R. 65-66.

## VII. DISCUSSION

In finding that Plaintiff had the RFC for a limited range of sedentary work, the ALJ considered the medical evidence, the medical opinions, and Plaintiff's subjective complaints. The ALJ was "partially persuaded" by the opinions of the stage agency physicians:

> The undersigned is partially persuaded by the opinions of Leigh Thomas, M.D., and Lynne Torello, M.D., given on behalf of the Division of Disability Determination (DDD) at the initial and reconsideration levels, respectively. Both reviewing physicians opined that the claimant is capable of exertion consistent with light-level work, subject to a number of postural, climbing, manipulative, and hazard exposure limitations. The undersigned finds these suggested additional limitations substantially consistent with the medical record, and has adopted them as noted above. Based on the claimant's subjective complaints of pain and limitation, including the neuropathic symptoms affecting her left foot, the undersigned finds it appropriate to restrict the claimant's exertion to only sedentary work, and to impose a moderate level of limitation in the operation of foot controls with the left lower extremity. Environmental exposure limitations have also been added as noted out of an abundance of caution because of the potential impact on the claimant's diabetes and hypertension symptoms.

R. 20-21 (citations to record omitted).

The ALJ also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record." R. 20.

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the claimant's statements regarding the extent of her post-amputation limitations are inconsistent over time. As noted above, the claimant made significant improvements in her functional abilities during physical therapy after the amputation, and was fitted for a prosthetic with ongoing adjustments. Her testimony varied widely, however. She needs to use a cane constantly, or a wheelchair, and has difficulty walking to the bus. And yet she did not take her cane with her to a number of medical appointments, and rode the bus to a shopping center the day before the hearing. The claimant took a trip to Chicago in early 2019, and records indicate that she did a fair amount of walking, but at the hearing she testified that she spent most of the trip in a hotel. The claimant cannot work because of her limited ability to stand and/or walk for extended periods of time, and believes that there is no work she could do sitting all day due to her limited education. She was a weekly all-day arts-and-crafts volunteer for multiple months prior to the current pandemic restrictions, however.
>
> In short, the claimant's current and ongoing level of impairment is not entirely clear, and her statements regarding such levels is inconsistent and variable. *Even if one were to take the most extreme level, however, namely that the claimant needs use a cane for ambulatory support and spend the vast majority of her day sitting, her statements concerning the intensity, persistence, and limiting effects of these symptoms would still be inconsistent with a finding of disability because, despite the limitations noted above, the claimant is still able to engage in work that exists in significant numbers in the national economy.* . . .

*Id.* (emphasis added) (citations to record omitted).

Plaintiff contends that the ALJ erred in her RFC determination because the ALJ failed to properly consider Plaintiff's need for an assistive device. This Court agrees.

As noted above, the medical evidence includes many references to concerns regarding Plaintiff's decreased balance. *See, e.g.*, R. 326, 323, 321, 319, 317, 316, 313, 311. Plaintiff also testified that she must use a quad cane to help her walk and "level [her]self," R. 42, 53, and that the cane helps her with balance. R. 53. Yet the ALJ's decision contains no express consideration of that issue and, although the RFC determination refers to the "use of a cane for ambulation," R. 16, that determination makes no mention of the use of a cane for balance. This omission was not harmless, because the vocational expert testified that the use of a cane for balance would preclude all sedentary and light work. R. 65-66.

15

The Acting Commissioner argues that the ALJ's RFC determination in this regard is supported by the opinions of the state agency physicians. *Defendant's Memorandum in Opposition*, ECF No. 17, PageID# 1348. This Court disagrees. The state agency physicians in fact opined that Plaintiff had no need whatsoever for an assistive device. R. 79, 102. The ALJ's RFC determination, which included the need for "the use of a cane for ambulation," R. 16, clearly rejected those opinions in this regard.

The Acting Commissioner also argues that the ALJ did not err in failing to include in the RFC a need for an assistive device for balance because the record does not satisfy the standard for such devices. *Defendant's Memorandum in Opposition*, ECF No. 17, PageID# 1354. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (Requiring "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed. . . ."). Again, the Court disagrees. The ALJ in fact found that the record documented the need for the use of a cane for ambulation. R. 16. The ALJ should therefore have also expressly determined whether the use of a cane was needed for balance, as Plaintiff alleges.

Under these circumstances, the Court concludes that the decision of the Commissioner must be reversed and remanded for further consideration of Plaintiff's RFC and, in particular, the need for an assistive device for balance.

**WHEREUPON**, the Court **DENIES** *Plaintiff's Motion to Vacate Referral of this Matter to the Magistrate Judge pursuant to F.R.C.P. 73(b)(3) and 28 U.S.C. 636(c)(4)*, ECF No. 20, **GRANTS** *Plaintiff's Statement of Errors*, ECF No. 14, **REVERSES** the decision of the

Commissioner, and **REMANDS** the matter to the Commissioner for further proceedings consistent with this *Opinion and Order*.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  March 13, 2023                               *s/Norah McCann King*
                                                                            NORAH McCANN KING
                                                                   UNITED STATES MAGISTRATE JUDGE